Leroy E. **MITCHELL**

v.

Frances A. **MITCHELL.**

Supreme Judicial Court of Maine.

Argued April 29, 1980.

Decided Sept. 3, 1980.

---

Caron, Ayotte & Caron, Edward L. Caron, Jr. (orally), Saco, for plaintiff.

Glassman, Beagle & Ridge, C. Alan Beagle (orally), Caroline Glassman, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and ROBERTS, JJ.

NICHOLS, Justice.

When the motion of the Plaintiff, Leroy E. Mitchell, to amend the judgment of divorce from the Defendant, Frances A. Mitchell, by terminating or reducing his obligation to pay alimony because of changes in their circumstances was denied on October 15, 1979, in Superior Court (York County), he seasonably appealed to this Court.

A cross–motion by the former wife for an increase in alimony was also denied, but she did not appeal.

His appeal presents issues, novel in this jurisdiction, as to (a) whether the divorce court has jurisdiction to modify the divorce judgment where the separation agreement requires the parties' written consent to modification, and (b) whether one's obligation to pay alimony is terminated by his former spouse's unmarried cohabitation. Another issue is (c) whether the former wife's financial circumstances have changed so materially that on those grounds the divorce court should have reduced the alimony.

Leroy E. Mitchell and Frances A. Mitchell were divorced in Superior Court on January 28, 1975. The court approved, and incorporated by reference into the divorce judgment, the parties' settlement agreement.

That agreement provided that Mr. Mitchell pay to Mrs. Mitchell $45 per week in alimony.

Under the settlement agreement, Mrs. Mitchell received the marital home. She assumed responsibility for household expenses, including the $7,000 mortgage, property taxes, and fuel bills. Mr. Mitchell paid for her electricity, water. and telephone.

At the time of the divorce Mrs. Mitchell worked at approximately minimum wage for a varying number of hours per week. At hearing on August 29, 1979, she could not remember what her average earnings were. At that time she had a small savings account.

The former wife now has a full–time job and takes home $515 per month. She sold the marital home in 1979 and invested the proceeds in interest–bearing certificates of deposit.

After selling the marital home, Mrs. Mitchell moved in with a gentleman friend. She testified that she moved because of fears about her eye trouble, which may lead to blindness. She is sixty years old.

Mrs. Mitchell pays $150 per month in rent to her friend. She and he each pay half of their joint household expenses.

Her gentleman friend is a widower, age 57. He does not work now, having spent the last seven years before the death of his paralyzed wife caring for her. He will start to receive social security benefits in two years. He and Mrs. Mitchell have not married because he would lose these benefits if they did. When counsel asked Mrs. Mitchell's friend if he had any present income, he stated "I don't have anything now." Counsel did not ask with what funds, or to what extent, he contributed to the household expenses.

Mr. Mitchell's income since the divorce has risen from $260 to $305 per week gross. He is remarried and lives in a house owned by his present wife. She has income from a trust fund and from her employment as a schoolteacher. The couple has a small savings account.

After hearing, the court denied both parties' motions to modify the alimony provision, finding "that the change of circumstances alleged by the parties insofar as financial status is concerned is more illusory than real   .   .   . ."

## I

■ The challenge to the divorce court's jurisdiction is grounded in the following language in the settlement agreement:

No modification of this Agreement shall be binding upon either of the parties unless reduced to writing and subscribed by both the parties.

Mrs. Mitchell construes this language as providing an exclusive, non–judicial mechanism for modification of alimony.

On our part we read this provision as merely specifying that the parties are not bound by any oral agreement between them to modify their settlement. The provision has no relation to the jurisdiction of the Superior Court over disputes arising when the parties cannot reach a written, signed agreement to modify. It does nothing more than prevent one party from coming into court and claiming that the other party had orally agreed to a modification in their agreement.

## II

■ Mr. Mitchell argues that his former spouse's unmarried cohabitation is *prima facie* evidence that alimony should be terminated. He contends that the evidence raises a presumption reversing the normal allocation of the burden of proof, which is that the paying spouse must show reduction in the recipient's need. Instead, Mrs. Mitchell would have to prove that her need continues.

Mr. Mitchell argues that unmarried cohabitation has all the practical attributes of marriage and should be treated like marriage in the determination of the cohabiting party's right to alimony.[1] Because remar-

---

1. A few courts have adopted rules similar to that urged upon us. *Taake v. Taake*, 70 Wis.2d

115, 233 N.W.2d 449, 453 (1975); *Grossman v. Grossman*, 128 N.J.Super. 193, 197, 319 A.2d

riage *prima facie* terminates the right to alimony, *Bubar v. Plant*, 141 Me. 407, 410, 44 A.2d 732, 734 (1945), he urges that unmarried cohabitation should have the same consequences.

The basis for the rule of *Bubar v. Plant, supra,* is that

> [I]t is against public policy in the ordinary case for one man to be supporting the wife of another who has himself assumed the *legal obligation* for her support. (emphasis supplied)

141 Me. at 410, 44 A.2d at 734. This reasoning does not apply to the case of an unmarried cohabitant receiving alimony. Though unmarried cohabitants may voluntarily contribute to each other's support, they have no legal obligation to pay. In the case before us any financial support her friend gives Mrs. Mitchell may be of uncertain amount and duration, and Mrs. Mitchell has no legal right to demand continued support from her companion. For this reason, the superficial resemblance of unmarried cohabitation to marriage does not warrant an inference that unmarried cohabitation ends the need for alimony.

■ After the failure of Mr. Mitchell's argument concerning a presumption of improvement in financial circumstances, no other grounds exist to support the rule he urges. The factors to be considered by the court in a petition for modification of alimony are limited to the former spouse's financial circumstances, because the sole purpose of alimony is to provide financial support to the former spouse where necessary. *Beal v. Beal*, Me., 388 A.2d 72, 76 (1978). Modification of alimony on the basis of moral judgments of the recipient's living arrangements would be beyond the scope of the divorce court's discretion. Accordingly, Mrs. Mitchell's cohabitation with

her friend has no relevance except insofar as the arrangement actually affects the former wife's financial circumstances. *In re Vaughn*, 25 Or.App. 655, 550 P.2d 1243, 1245 (1976).

### III

■ Mr. Mitchell argues that the divorce court's finding of no substantial change in Mrs. Mitchell's financial circumstances was erroneous. He first contends that because her friend testified he had no income, the court should infer that Mrs. Mitchell is using her alimony in part for the benefit of her friend. Mr. Mitchell argues that this use is "unconscionable" and mandates termination of alimony. However, there is conflicting evidence on this issue. Mrs. Mitchell testified that she and her friend each pay half of the household expenses. The credibility of the witnesses is a central factor on this issue. Therefore, the trial judge's conclusion carries great weight. M.R.Civ.P. 52(a). Our review of the transcript with deference to the finding below indicates that the trial judge could reasonably have concluded that Mrs. Mitchell was not using the alimony to support her gentleman friend.

In addition, even if the alimony did benefit her friend that fact would not prove that the former wife's needs have decreased. For example, her friend benefits from her expenditures on heating fuel, but the cost to Mrs. Mitchell is the same as if she lived alone. Additional evidence is necessary to prove that Mrs. Mitchell does not need alimony.

Mr. Mitchell also argues that his former wife has a decreased need for alimony because she obtained an income–producing investment, using the proceeds from the sale of her house. However, Mrs. Mitchell's fi-

---

508, 510 (Ch.Div.1974). Some states have adopted a similar rule by statute. N.Y.Dom. Rel.Law § 248 (McKinney 1977); Ill.Rev.Stat. ch. 40, § 510(b) (Supp.1980); Ala.Code § 30–2–55 (Supp.1979). However, several states have soundly rejected the rule. *Hazlewood v. Hazlewood*, 89 N.M. 659, 661, 556 P.2d 345, 347 (1976); *In re Vann*, 24 Or.App. 31, 33, 544 P.2d

175, 177 (1976). The prevailing view is that an ex-spouse's unmarried cohabitation is not in itself, without proof of change in financial circumstances, grounds for modification of alimony. 2A Nelson, *Divorce and Annulment* § 19.-17 (2d ed. 1961), H. Clark, *Law of Domestic Relations* 463 (1968).

nancial situation did not change when she sold her house; she merely converted that asset into another form. As there is no evidence that Mrs. Mitchell's assets have significantly increased, her income from the investment does not justify modification of the alimony provision.

Mr. Mitchell's other contentions are that his former wife now has a job that pays more than the work she did while married, and that she reduced her living expenses by sharing household costs with a friend.

By comparison, however, to Mr. Mitchell's increased earnings and the new living arrangements, the divorce court concluded that any change of circumstances was "more illusory than real." Applying the "clearly erroneous" test for review of the trial court's finding of fact, M.R.Civ.P. 52(a), we uphold that conclusion.

The entry is:

Appeal denied.

Judgment affirmed.

Remanded to Superior Court for entry of an order requiring Leroy E. Mitchell to pay Frances A. Mitchell an appropriate counsel fee on this appeal.

All concurring.