2005 ME 91

**Laurie WEBB**

v.

**Jeffrey WEBB.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 20, 2005.

Decided: July 29, 2005.

Robert M.A. Nadeau. Esq., Nadeau & Associates, P.A., Wells, for plaintiff.

Ronald A. Bourque, Esq., Jessica A. Demers, Esq., Bourque & Clegg, Sanford, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, CALKINS, and LEVY, JJ.*

CLIFFORD, J.

[¶ 1] Laurie Webb appeals from a judgment of divorce between Laurie and Jeffrey Webb entered in the District Court (Springvale, *Janelle, J.*). Although the parties agreed to the terms of the divorce, the court entered the judgment following the failure of the parties to agree on specific language implementing the terms of

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

that agreement. Laurie contends that the court's divorce judgment does not properly comport with the parties' agreement. We disagree and affirm the judgment.

[¶ 2] The Webbs were married in 1988 and have three minor children. In December of 2002, Laurie initiated divorce proceedings pursuant to 19–A M.R.S.A. § 902(1)(H) (1998).[1] At a settlement hearing with the court in July of 2004, the parties reached an agreement as to the provisions of a divorce judgment and read the terms of that agreement into the record. The court approved the stipulated provisions and requested that Jeffrey's attorney submit a proposed judgment in accordance with the stipulated terms.

[¶ 3] A draft judgment was prepared, but Laurie would not agree to its language. Laurie's attorney then drafted and submitted to the court an alternate proposed judgment, which consisted merely of a verbatim transcript of the recorded settlement hearing. On October 1, 2004, following at least two additional hearings, the court entered a divorce judgment, with an accompanying child support order and Qualified Domestic Relations Order (QDRO), which the court understood to incorporate the terms of the parties' agreement with regard to parental rights and responsibilities, real estate, personal property, child and spousal support, insurance, debts, taxes, and attorney fees. Laurie filed this appeal following the entry of that judgment.

[¶ 4] Laurie contends that the divorce judgment entered by the court fails to accurately incorporate the terms of the parties' agreement in four respects. With respect to the court's understanding of the terms to which the parties agreed, we review the judgment for clear error. *Cf.*

*Thompson v. Rothman*, 2002 ME 39, ¶¶ 6–8, 791 A.2d 921, 923–24 (discussing the standard of review for trial court orders reviewing and clarifying prior orders of the court). As to the additional language used by the court in the divorce judgment, however, our review is deferential, and is limited to whether the court exceeded the bounds of its discretion. *See Jacobs v. Jacobs*, 507 A.2d 596, 600 (Me.1986). "Unless [we] can determine that the court has violated some positive rule of law or has reached a result which is plainly and unmistakably an injustice that is 'so apparent as to be instantly visible without argument,' the ruling appealed from must be approved." *Id.* (quoting *Capron v. Capron*, 403 A.2d 1217, 1218 (Me.1979)). A judgment in any matter constitutes a court-fashioned remedy, even when the parties agree generally as to the remedy they seek. *See Thompson v. Gilmore*, 50 Me. 428, 434 (1861) ("A judgment is defined by Blackstone to be a sentence of the law, pronounced by the Court upon matters contained in the record ...."); *see also* BLACK'S LAW DICTIONARY 846 (7th ed.1999) (emphasis added) (defining "judgment" as "[a] *court's* final determination of the rights and obligations of the parties in a case"). Further, in divorce cases, the court has a special *parens patriae* role in resolving custody matters according to the best interest of the children, and must independently evaluate the divorce dispute using "sound judicial discretion." *Jacobs*, 507 A.2d at 599–600. These duties must be fulfilled by the court regardless of whether the parties have reached an agreement, and what the terms of that agreement are.

[¶ 5] In her first contention, Laurie argues that although the judgment accurately reflects the amount of child support

---

1. Section 902 states, in pertinent part: "A divorce may be granted for ... [i]rreconcil-able marital differences." 19–A M.R.S.A. § 902(1)(H) (1998).

to which the parties agreed, she never agreed to the following language of the judgment: "The deviation in child support provided for hereunder is predicated on the interrelationship of the total support obligation established under the support guidelines for child support and the division of marital property set forth herein. See Title 19–A M.R.S.A. Section 2007(3)(c) [*sic* ]." She also contends that such language erroneously prohibits her from ever seeking modification of the child support order.

[¶ 6] Laurie's argument is without merit. Title 19–A M.R.S.A. § 2005 provides that the child support amount as set out in the child support guidelines is the presumptive amount to be ordered. 19–A M.R.S.A. § 2005 (Supp.2004). A court may deviate from the child support guidelines only if the deviation is based on one of the "[c]riteria that may justify deviation from the support guidelines" stated in 19–A M.R.S.A. § 2007(3) (1998). If the parties stipulate to a such deviation, the court must still determine whether the deviation is "justified and appropriate under section 2007." 19–A M.R.S.A. § 2008 (1998).

[¶ 7] In this case, the parties agreed to $1200 per month in child support, which constitutes a substantial departure from the $941.33 per month presumptive amount reflected in the most recent child support guidelines. Pursuant to section 2005, the court was required to justify the deviation from the child support guidelines, and did so pursuant to section 2007(3)(C), based on the "interrelation of the total support obligation established under the support guidelines for child support, the division of property and an award of spousal support made in the same proceeding for which a parental support obligation is being determined . . . ." *See* 19–A M.R.S.A. § 2007(3)(C). Thus, the language to which Laurie objects was includ-

ed in the judgment by the court to comply with a statutory requirement, and is not contrary to either the letter or the spirit of the agreement of the parties as to child support. Moreover, contrary to Laurie's contention, the divorce judgment does not prohibit requests to modify the child support order, and indeed, the incorporated child support order itself expressly provides: "Any party to this action may ask the court to review the amount of child support and if appropriate, to modify it in accordance with the state's child support guidelines." The court committed no error, nor did it act beyond its discretion, in establishing the child support provisions set out in the divorce judgment.

■ [¶ 8] Laurie's second contention is that she never agreed to the language in the judgment qualifying Jeffrey's responsibility to maintain health insurance for their children: "Defendant will maintain medical insurance for the benefit of the parties' minor children *so long as it is reasonably available to him through his place of employment.*" (Emphasis added.) Laurie contends that the agreement was that Jeffrey would provide the children with health insurance regardless of its reasonable availability to him at work, and thus that the italicized language must·be deleted from the judgment.

[¶ 9] The language used by the court is taken directly from the parental rights and responsibilities statute:

> The court may require the payment of part or all of the medical expenses, hospital expenses and other health care expenses of the child. The court order must include a provision requiring the obligated parent to obtain and maintain health insurance coverage for medical, hospitalization and dental expenses, *if reasonable cost health insurance is available to the obligated parent.*

19–A M.R.S.A. § 1653(8)(C) (1998) (emphasis added). The statute further defines "reasonable cost health insurance" as "health insurance that is employment-related or other group health insurance." 19–A M.R.S.A. § 1501(4) (1998). In including that language in the judgment, the court invoked its authority to independently evaluate the terms of any agreement the parties reached, and ensure that provisions included in the judgment are consistent with statutory provisions and are appropriate to the circumstances of this divorce. The court did not act beyond its discretion in its use in the judgment of language covering health insurance.

[¶ 10] As part of their stipulation, the parties agreed that "emancipation" would be the terminating event for the children's residence in the marital home. Laurie's third contention is that she never agreed to the court's definition of "emancipation" that the court used in the judgment, i.e., the youngest child "completing his high school education or attaining the age of 18, whichever occurs last."

[¶ 11] Although Laurie and Jeffrey never explicitly defined "emancipation" in the agreement they read into the record, the court used a reasonable and common sense definition based on the parties' agreement, and included that definition in the judgment to avoid leaving an ambiguous but undefined term in the judgment. Despite the existence of a purported agreement between the parties, the court has a positive duty to make appropriate determinations with regard to spousal and child support, property rights, and other matters when the parties have failed to do so. *See, e.g.,* 19–A M.R.S.A. §§ 951–A, 953, 2006 (1998 & Supp.2004). The court therefore committed no error, and it acted well within its discretion, in defining emancipation in the judgment.

[¶ 12] In Laurie's last contention, she argues that the court erroneously omitted a contingency from its provision with regard to the terms covering a 401(K) account. In their agreement, the parties provided that the account, valued at approximately $25,000, would be awarded to Laurie pursuant to the QDRO, "subject to verification that ... there is no penalty to Mrs. Webb if she withdraws that money within thirty days from the date of divorce." Laurie contends that the court erred because the judgment entered by the court did not include the verification condition, but instead ordered that the account simply be turned over to Laurie.

[¶ 13] This contention is also without merit. The record reflects that after the settlement hearing but prior to the entry of the court's judgment, it was determined by counsel that no such penalty existed as a matter of law pursuant to federal taxation statutes, and therefore that the verification condition was no longer necessary. Because the verification condition had already been satisfied prior to the judgment, the court did not err, nor did it act beyond its discretion, when it failed to reiterate the satisfied judgment.

[¶ 14] The crux of Laurie's argument is that, in entering a judgment, the court was strictly limited to an exact transcription of statements made by the parties at a July 2004 settlement hearing. This argument is without merit. In fashioning a divorce judgment based on the parties' agreement, the court is not limited to the ministerial task of transcribing the exact language the attorneys spoke at the hearing at which the agreement was reached, but, pursuant to its *parens patriae* role, should enter a judgment that is fair, reasonable, and responsible. *See Jacobs,* 507 A.2d at 599–600.

The entry is:

Judgment affirmed.