2010 ME 99

**Kristen L. DEWHURST**

v.

**Troy W. DEWHURST.**

Supreme Judicial Court of Maine.

Argued: June 16, 2010.

Decided: Oct. 14, 2010.

Dana E. Prescott, Esq. (orally), Prescott, Jamieson, Nelson & Murphy, LLC, Saco, ME, for Troy W. Dewhurst.

Donna A. Bailey, Esq., Thomas J. Greco, Esq. (orally), Williams–Greco, P.A., Biddeford, ME, for Kristen L. Dewhurst.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1]   Troy W. Dewhurst appeals from a judgment of divorce, entered in the District Court (York, *Fritzsche, J.*) on Kristen L. Dewhurst's complaint.  The terms of the judgment came from a document, generated by Kristen, that the court found reflected an agreement reached by the parties after a judicial settlement conference.  The issue before us is whether the court erred in holding that the parties entered into an enforceable agreement at the judicial settlement conference.  Troy contends that because the parties did not execute the agreement or stipulate to it on the record, the court erred by enforcing and entering a judgment of divorce based on the purported agreement.  We vacate the judgment and remand to the District Court.

[¶ 2]   Troy and Kristen married in 2000, and have two minor children.  In January of 2008, Kristen initiated divorce proceedings pursuant to 19–A M.R.S. § 902(1)(H)

(2009).[1]  After unsuccessful mediation in November of that year, the court (*Brennan, J.*) conducted a settlement conference at the York County Courthouse on the morning of March 6, 2009.  During the course of the conference, the guardian ad litem made handwritten edits to a copy of a draft divorce judgment that had been prepared by Kristen's attorney.  After half a day of negotiations, the parties and their respective counsel reviewed the edited draft divorce judgment with the judge in his chambers, but did not sign the judgment, request the judge to approve and enter the judgment, or place on the record any statement indicating that the parties had reached an agreement.

[¶ 3]  After the conference, Kristen's attorney prepared a proposed divorce judgment that incorporated changes made in response to the discussions that had taken place at the conference.  Troy would not agree to the proposed judgment, contending that he had not agreed to all of its terms.  Kristen moved to enforce the agreement on June 3, 2009.  The areas of disagreement between the parties concerned the allocation of parental rights and responsibilities, the children's primary residence, and the parents' contact schedules with the children.

[¶ 4]  The court (*Fritzsche, J.*) conducted a testimonial hearing on the motion to enforce on September 9, 2009, during which the parties and Justice Brennan testified.  Acknowledging that there are better ways of documenting an agreement, the court found that the parties came to an agreement at the conference and that that agreement was represented in the proposed divorce judgment submitted with the motion to enforce.  On September 15,

2009, the court entered the judgment of divorce.  The court denied Troy's motion for reconsideration pursuant to M.R. Civ. P. 59, and Troy timely appealed pursuant to 14 M.R.S. § 1901 (2009) and M.R.App. P. 2.

[¶ 5]  The sole issue on appeal is whether the parties had an enforceable agreement when they left the judicial settlement conference.  We analyze settlement agreements in civil matters as contracts and "the existence of a binding settlement is a question of fact."  *Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 6, 968 A.2d 539, 541; *see also White v. Fleet Bank of Me.*, 2005 ME 72, ¶ 13, 875 A.2d 680, 683 (citing *Ault v. Pakulski*, 520 A.2d 703, 705 (Me.1987)) (distinguishing between an enforceable agreement and an agreement to agree).  A settlement agreement in a family matter is distinguishable from contracts in general, however, because of the public interest in guaranteeing that such agreements are fairly made and consistent with public policy.  *See Coe v. Coe*, 145 Me. 71, 74, 71 A.2d 514, 515 (1950); Levy, *Maine Family Law* § 10.2 at 10–3 to 10–4 (6th ed.2009).

[¶ 6]  Since 1984, almost all parties seeking an order of parental rights and responsibilities have been required to participate in mandatory mediation.[2]  P.L. 1983, ch. 813, § 4 (effective July 25, 1984) (codified at 19 M.R.S. § 665), *repealed and replaced by* P.L.1995, ch. 694, §§ B–1 to B–2 (effective Oct. 1, 1997) (codified at 19–A M.R.S. § 251(2) (2009)).  The court also has discretion to order mediation in divorce matters not involving minor children pursuant to 19–A M.R.S. § 251(1) (2009).

---

1.  Section 902 provides, in relevant part, that "[a] divorce may be granted for ... [i]rreconcilable marital differences."  19–A M.R.S. § 902(1)(H) (2009).

2.  Upon a motion supported by affidavit demonstrating extraordinary cause, the court may waive the mediation requirement.  19–A M.R.S. § 251(2)(B) (2009).

In mediated family and divorce cases, any "agreement reached by the parties through mediation on issues *must be reduced to writing, signed by the parties and presented to the court for approval as a court order.*"[3] 19-A M.R.S. § 251(3) (2009) (emphasis added). When asked to consider the meaning of an iteration of that phrase in the predecessor to section 251, we held that a party to a divorce action could not be forced to sign an agreement allegedly reached during mediation. *Bennett v. Bennett*, 587 A.2d 463, 464 (Me. 1991). In *Bennett*, we explained the rationale behind the requirement for a written, signed agreement:

> The provisions in section [251] governing the requirements of an agreement reached through mediation explicitly assure the court of the parties' consent to and willingness to be bound by the terms of their agreement. Absent such a signed, written agreement being submitted to it, the court makes a determination of the issues presented by an action for divorce based on the evidence adduced by the parties at the time of the trial of that action.

*Id.*

[¶ 7] We previously held that testimony by one party, in front of the other party, stating the terms of a settlement agreement in a family matter proceeding is adequate to support the entry of a final judgment of divorce despite the withdrawal of consent by one of the parties before the entry of the written judgment. *See Page v. Page*, 671 A.2d 956, 957 (Me.1996). In *Page*, we emphasized that "[t]he terms of the settlement were discussed at length on the record, and *at that time all parties agreed to the settlement.*" *Id.* at 957–58 (emphasis added). In *Page*, we enforced the agreement because the parties had memorialized the fact of and their consent to the agreement on the record with the court.[4] *Id.*

[¶ 8] We have also explained why *ordering* one party to sign what purports to be an agreement reached between the parties would be problematic:

> To read such a mandate into the language of [the divorce mediation statute] would of necessity require the trial court to engage in the time-consuming process of exploring what transpired between the parties during the course of the mediation in order to determine if they had reached any agreement and, if so, the actual terms of that agreement. Clearly, this is contrary to and would undermine the basic policy of the mediation process that parties be encouraged to arrive at a settlement of disputed issues without the intervention of the court.

3. In the analogous context of mandatory alternative dispute resolution in civil cases, a similar requirement appears. M.R. Civ. P. 16B(h)(1) ("If the conference results in a settlement, the parties shall, within 10 days after the conference, report that fact to the court and include a proposed order concerning the settlement.").

4. A record of an agreement does not guarantee enforcement as written. In *Webb v. Webb*, we approved the court's use of its discretion when it added a provision regarding health insurance for the parties' minor children to a divorce judgment. 2005 ME 91, ¶¶ 8–9, 878 A.2d 522, 525–26. Although the language had not been included in the parties' settlement agreement, the language was consistent with statutory provisions and appropriate to the circumstances of the divorce. *Id.* ¶ 9, 878 A.2d at 526; *see* 19-A M.R.S. § 1653(8)(C) (2009) (requiring one parent to provide private health insurance for a child if it is available at a reasonable cost); *see also Cloutier v. Cloutier*, 2003 ME 4, ¶¶ 11–12, 814 A.2d 979, 983 (laying out factors a court may consider when determining whether to set aside a mediated divorce agreement).

*Bennett,* 587 A.2d at 464. The present case presents a situation similar to the one presented in *Bennett:* one party attempting to have the court adopt as its judgment the terms of·an alleged agreement between the parties, without a record of the agreement by elocution or execution.

[¶ 9] Although the resolution event here was a judicial settlement conference rather than mediation, we see no reason to depart from the requirement that parties to a family matter case who wish to have the terms of their settlement accepted by the court must create a record of that agreement. If judges are to continue to commit their valuable and limited time to these endeavors, we must ensure that the neutrality and integrity of the settlement judge and the transparency of the proceedings will not be questioned.

[¶ 10] A complete record is particularly important for judicially assisted settlement agreements in divorce and family cases because "the court is called upon to exercise its authority in equity, and may be required to act as *parens patriae* if children are involved." *Cloutier v. Cloutier,* 2003 ME 4, ¶ 7, 814 A.2d 979, 982. The court must independently evaluate a settlement agreement involving minor children to ensure custody matters are resolved according to the children's best interest. *Webb v. Webb,* 2005 ME 91, ¶ 4, 878 A.2d 522, 524. The court will only be able to undertake such an independent evaluation if it is fully apprised of the terms of the settlement reached by the parties.

[¶ 11] We hold that for an agreement reached in a family matter judicial settlement conference to be enforceable, the parties must demonstrate their consent by creating a record of their agreement. The parties may memorialize their mutual assent by signing a written agreement or by placing their oral stipulation on the record in open court.[5] *See Page,* 671 A.2d at 957. The creation of such a record assures this Court and the trial court that the parties know what they have agreed to and that they are satisfied with the result.

[¶ 12] Our focus in this case has been limited exclusively to family matter cases. We note, however, that all judicial settlement conferences that result in any sort of resolution should involve the creation of a record.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

5. In order to obtain a divorce judgment, the parties must have a hearing, pursuant to M.R. Civ. P. 115. Title 19–A M.R.S. § 901(4) (2009) requires that the "complaining party" testify at the uncontested divorce hearing, although his or her testimony need not be corroborated by witnesses.