STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-09-31
TEH-CUM- 4/8/2013

PIKE INDUSTRIES, INC.,

    Petitioner,

  v.

CITY OF WESTBROOK,

    Respondent,

and

IDEXX LABORATORIES, INC.,
ARTEL, INC., and SMILING HILL
FARM, INC.,

    Intervenors

ORDER UPON MOTION AND CROSS
MOTION FOR RECONSIDERATION OF
ORDER DENYING FINAL APPROVAL OF
AMENDED CONSENT DECREE

Pending before the court are: (1) the motion of Intervenors Artel, Inc. and Smiling Hill Farm, Inc. (collectively, Artel) for correction and reconsideration of this Court's Order on Motion for Final Approval of Amended Consent Decree (hereinafter "Mar. 13, 2013, Order") denying final approval of the Amended Consent Decree presented by Petitioner Pike Industries, Inc., Respondent City of Westbrook, and Intervenor IDEXX Laboratories; and (2) the cross-motion of Pike, the City, and IDEXX for reconsideration of the Mar. 13, 2013, Order.

In its motion, Artel requests a correction of a portion of the Order regarding the preservation of an argument and generally requests reconsideration of the decision to address allegedly lingering illegalities of the Amended Consent Decree. Pike opposes Artel's motion, and in its cross motion for reconsideration requests that the Court conclude that the Amended

1

Consent Decree is not unlawful and may be approved by the Court. The City and IDEXX have joined in Pike's cross–motion. The Court decides both motions without oral argument. *See* M.R. Civ. P. 7(b)(7).

Since the enactment of the zoning ordinance amendment by the Westbrook City Council, the primary tension between the parties has been what effect the consent decree will have in the future, specifically with respect to enforcement of its embodied terms. "[A] consent decree is the product of negotiations by parties who elect to waive their rights to litigate and, instead, reach a compromise in which the parties each give up something they might have won through litigation." *N. New Eng. Tel. Operations LLC v. Pub. Utils. Comm'n*, 2013 ME 11, ¶ 10, 58 A.2d 1143 (quoting *State v. Shattuck*, 2000 ME 38, ¶ 18, 747 A.2d 174). In the context of land use litigation between a landowner and a municipality, the Law Court has instructed that any agreement regarding use of the property that is at odds with the existing permitted uses on the property must also comply with statutorily mandated procedures for land use regulation. *See Pike Industries, Inc. v. City of Westbrook*, 2012 ME 78, ¶¶ 36-37, 45 A.3d 707. The parties sought to accomplish this by pursuing and obtaining a zoning amendment for Pike's property. *See* Westbrook, Me., Land Use Ordinance § 311.5 (Oct. 15, 2012).

After the City Council approved the zoning amendment, Pike, the City, and IDEXX presented the Consent Decree to the Court for its approval. Following extensive briefing and argument, the Court identified several areas of concern within the Consent Decree, the most important of which were (1) provisions of the Consent Decree that were more restrictive than the ordinance, and (2) the binding nature of the Consent Decree, which set the land use standards for Pike's property in perpetuity. (Order on Motion for Final Approval of Consent Decree (hereinafter, "Dec. 11, 2012, Order") at 11, 13.) Artel had also identified several other

2

provisions of the Consent Decree which allegedly were at odds with the ordinance, but the Court concluded that there was either (1) no discrepancy (Consent Decree ¶¶ 16-17); (2) any discrepancy reflected the passage of time and would not result in any substantive distinction (Consent Decree ¶¶ 22, 23(b)-(c), 32-34); or (3) the provision did not relate to allowable uses of land and thus was not required to be part of the ordinance (Consent Decree ¶¶ 21,31, 55-56). (*See* Dec. 11, 2012, Order 8-10.)

In response, Pike, the City, and IDEXX amended the Consent Decree to address the Court's concerns and presented the Amended Consent Decree to the Court for its approval. Nevertheless, issues remained, and the Court could not grant final approval to the Consent Decree. Paragraph 60[1] of the Amended Consent Decree still allows "the City to enforce land use performance standards of the Amended Consent Decree through the court process, contrary to the Law Court's instruction in *Pike Industries*." (Mar. 13, 2013, Order 4.) Moreover, paragraph 19(c) is problematic "because it purports to supersede any future zoning ordinance regarding blasting and would thus be subject to the same infirmity as" previously identified. (Mar. 13, 2013, Order 4.)

In its motion for reconsideration, Artel argues that paragraph 60 does more than give the City the power enforce the land use regulations through contract; it also prevents the City from enacting future changes to the land use standards applicable to Pike's property. (Intervs.' M. Reconsid. 4: Intervs.' Reply 2-6.) Pike responds in its cross–motion that the Amended Consent Decree's "performance standards are not free-standing land use restriction, but instead serve to delineate Pikes grandfathered rights" (Pet.'s M. Reconsid. 2), and those standards "serve to define the 'nature of the use, the quality and character of the use, the degree of the use, and the

---

[1] Both the original Consent Decree and the Amended Consent Decree contain two paragraphs numbered 60. The Court refers to the first paragraph 60 throughout this order.

3

kind of use' that Pike is entitled to continue to engage in as a grandfathered right" (Pet.'s M. Reconsid. 3 (quoting Amend. Consent Decree ¶ 14)). Pike contends that the ability of any party to enforce any terms of the Consent Decree "does not transform what the parties have said is a delineation of Pike's grandfathered rights into something that purports to be an enforceable land use regulation." (Pet.'s M. Reconsid. 3.)

The problem with Pike's argument is that both grandfather rights and land use regulations define and delineate the allowable *uses* of land. A grandfathered right is an "actual and substantial" use of land that "existed prior to the enactment of the zoning provision prohibiting it." *Turbat Creek Preservation, LLC v. Town of Kennebunkport*, 2000 ME 109, ¶ 13, 753 A.2d 489 (quoting *Town of Orono v. LaPointe*, 1997 ME 185, ¶ 13, 698 A.2d 1059). *See also* 30-A M.R.S. § 4301(8) (2012) (defining land use regulation). Having grandfathered rights is meaningless if it does not permit a property owner to *use* the property in conformity with those rights. Although the parties changed the language of paragraph 14 from "performance standards" to "grandfathered rights" between the original and amended consent decrees, that change does not alter the fact that the parties' agreement is about how Pike will *use* its land. Acceptance of Pike's argument would elevate the terminology of the agreement over the substance of the agreement, which the Court cannot do. To be clear, regardless of whether the parties call the uses within the Amended Consent Decree "grandfathered rights" or "performance standards," those provisions clearly regulate the use of land. The City can only enforce land use regulations through the statutorily prescribed processes within Title 30-A of the Maine Revised Statutes. Paragraph 60 gives the City a separate avenue to enforce these land use regulations, and the Court cannot approve any consent decree that permits that outcome.

4

The Court is not persuaded by Pike's arguments that paragraph 60 is just a procedural mechanism, and the Court should interpret the provision to have lawful effect. (Pet.'s M. Reconsid. 4-6.) Pike contends that paragraph 60 is permissible because it does not dictate how a Court will rule on a motion to enforce, it only provides a procedural mechanism for the enforcement. The issue, however, with paragraph 60 is precisely the fact that it *is* a procedural mechanism to enforce land use regulations outside the strictures of Title 30-A. Pike also contends that the Court should interpret the Consent Decree to give it lawful effect, rather than unlawful effect. Nevertheless, the Court has not been called upon to interpret the pre-existing private contract between the parties, wherein the rules of interpretation cited by Pike would apply. *See, e.g.*, *McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 52 (Me. 1996); *Judkins v. Chase*, 123 Me. 433, 123 A. 516 (1924). The Court has been called upon to approve a consent decree, which reflects "an agreement that the parties desire and expect will be reflected in, and enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Long v. Maryland*, 807 A.2d 1, 7 (Md. 2002) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992). Accordingly, the Court should not and cannot approve a consent judgment that is unlawful in some respect.

The Court, however, does not agree with Artel that paragraph 60 prohibits the City from ever changing its zoning ordinance or any of the extractive industry standards within its Land Use Ordinance. First, the Amended Consent Decree does not so explicitly provide, and any suggestion of such a limitation has been deleted from the decree. Second, the validity of the Amended Consent Decree comes from not just the agreement of the parties, but importantly from the zoning ordinance amendment. Through the advocacy of Artel's counsel in pointing out and identifying various discrepancies between the decree and the ordinance, with the exception of

5

already noted issues, the provisions in the Amended Consent Decree that relate to allowable uses of land and section 311.5 of the City's Land Use Ordinance are now identical. Thus, all of Pike's grandfathered rights are permitted uses of land on its property pursuant to the zoning amendment, and the standards in the Amended Consent Decree do not enlarge those rights. As the Court has observed before, "even if the City were to repeal those provisions at some point in the future, Pike's use of the property consistent with the existing ordinance would qualify as a lawful prior non-conforming use." (Dec. 11, 2012, Order 5 (citing Westbrook, Me., Land Use Ordinance §§ 203.1, 203.2 (Oct. 15, 2012).)

Pike also requests in its cross-motion that the Court reconsider its ruling on paragraph 19(c). The Court has reviewed Pike's arguments on this point and finds them unpersuasive. Moreover, the Court cannot simply strike the sentence from the Amended Consent Decree:

> [w]hile the court may either approve or deny the issuance of a consent decree, generally it is not entitled to change the terms of the agreement stipulated to by the parties. . . . If the court discerns a problem with a stipulated agreement, it should advise the parties of its concern and allow them an opportunity to revise the agreement.

*Long*, 807 A.2d at 10 (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991)). (citations omitted). The Court cannot strike the sentence because it would be "substitut[ing] its own judgment for that of the parties, and, in the process, undermin[ing] the settlement agreement at issue, and consent judgments in general, contrary to the State's longstanding policy of encouraging settlements." *Long*, 807 A.2d at 11; *cf. Dewhurst v. Dewhurst*, 2010 ME 99, ¶¶ 8-9, 5 A.3d 23 (reflecting and highlighting Maine's long-standing policy of encouraging settlement between parties).

In sum, the Court cannot grant Pike's motion for reconsideration because it cannot interpret paragraph 60 or revise paragraph 19(c) of the Amended Consent Decree as Pike

6

requests. The Court has no difficulty concluding that generally the Amended Consent Decree is the product of serious and substantial efforts by Pike, the City and IDEXX to comply with the decision of the Law Court in *Pike Industries*, and with this Court's Orders that flow from that decision. And, in large measure, they have nearly done so. However, as noted in the Mar. 13, 2013, Order, this court has discerned two discrete problems remaining with the Amended Consent Decree and, consistent with what this Court views as the sound reasoning of *Long*, Pike, the City and IDEXX should be allowed "an opportunity to revise the agreement." *Long*, 807 A.2d at 10.

Finally, the Court addresses Artel's request for correction of the Court's Mar. 13, 2013, Order. The Court stated:

> Although the Court is not persuaded by Artel's argument, it now notes a remaining issue in the Amended Consent Decree regarding enforcement – one that has not heretofore been discerned by the parties, the intervenors[,] or the Court[, namely that] paragraph 60 still allows the City to enforce land use performance standards of the Amended Consent Decree through the court process, contrary to the Law Court's instruction in *Pike Industries*.

(Mar. 13. 2013, Order at 3-4.) Artel contends it raised this issue in its briefing opposing the amended consent decree and, in what the Court interprets to be an abundance of caution, requests correction of the order to ensure preservation of the argument on appeal. To the extent Artel raised this argument in its previous briefing or at oral argument, the issue has been preserved for appeal — action by the Court cannot affect Artel's rights on appeal. Nevertheless, the Court notes and recognizes that the argument was made in Artel's memorandum.

Based on the foregoing, although Artel's motion for correction of the Mar. 13, 2013, Order will be granted, the Court must deny Artel's motion for reconsideration and Pike's cross-motion for reconsideration of the Mar. 13, 2013, Order. Pike, the City and IDEXX may choose to further amend the Amended Consent Decree and present such further amendment to

7

the Court; they may pursue such other course of action as they deem appropriate under the circumstances; or, in the alternative, they may choose to proceed with this litigation. In order to determine the future course of this matter, the Court shall schedule an expedited case management conference with counsel for the parties and the intervenors.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this order into the docket by reference and the entry is:

> Artel's Motion for Reconsideration is GRANTED as to the correction noted, and otherwise DENIED; and
>
> Pikes's Motion for Reconsideration is DENIED.
>
> An expedited Case Management Conference with counsel for the parties and the Intervenors shall be scheduled by the Court.

Date: April 8, 2013

Thomas E. Humphrey
Chief Justice, Superior Court

Entered on the Docket: 4·8·13
Copies sent via Mail ___ Electronically ✓

8

BCD-AP-09-31

Pike Industries, Inc. (Petitioner) v. City of Westbrook (Respondent) and Idexx Laboratories, Inc., Artel, Inc., and Smiling Hill Farms, Inc., (Intervenors)

Counsel for Petitioner:

Sigmund Shutz, Esq.
Preti Flaherty Beliveau & Pachios, LLP
P.O. Box 9546
Portland, ME 04112-9546

Counsel for Respondent:

Natalie Burns, Esq.
Jensen Baird Gardner & Henry
Ten Free Street
P.O. Box 4510
Portland, ME 04112-4510

Counsel for Interventor Smiling Hill Farm:

David Silk, Esq.
Curtis Thaxter
One Canal Plaza, Suite 1000
P.O. Box 7320
Portland, ME 04112-7320

Counsel for Intervenor Artel, Inc.

David Bertoni, Esq.
Dan Nuzzi, Esq.
Brann & Isaacson
184 Man Street, Box 3070
Lewiston, ME 04243-3070

Counsel for Idexx Laboratoies, Inc.

William Plouffe, Esq.
Drummond Woodsum
84 Marginal Away, Suite 600
Portland, ME 04101