2003 ME 4

**Dawn L. CLOUTIER**

v.

**Lorenzo R. CLOUTIER.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 26, 2002.

Decided: Jan. 14, 2003.

---

Fredda Fisher Wolf, Hardy Wolf & Downing, P.A., Lewiston, for plaintiff.

Edward Rabasco Jr., Gosselin, Dubord & Rabasco, P.A., Lewiston, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Lorenzo Cloutier appeals from a divorce judgment entered in the District Court (Lewiston, *Beliveau, J.*) and contests specific property distributions and debt allocations in the divorce judgment. Lorenzo argues that the District Court (1) improperly ignored the pretrial order and mediation agreement when it awarded the family home to Dawn Cloutier and (2) improperly made him responsible for debt evidenced by a promissory note. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Lorenzo and Dawn Cloutier were married on August 29, 1987, and three children were born to the marriage. Early in their marriage, they purchased land in Greene and built a house on it. At the time of the divorce, the house was valued at approximately $80,000, and the Cloutiers owed $61,000 on the mortgage. Lorenzo's father, Wilfred, gave the Cloutiers $25,000 to purchase the land and build the house. Wilfred provided for the $25,000 with a home equity line of credit from the Rainbow Credit Union secured by his own home. In return, the Cloutiers signed a promissory note in favor of Wilfred for $25,000 plus interest.

[¶ 3] At the time of the trial, Lorenzo was employed at L.L. Bean as a team leader in technology services with an approximate salary of $38,667. Dawn worked at Mid–State College as an accountant and earned approximately $20,400. The house has an apartment attached to it that creates $125 a week in rental income.

[¶ 4] Dawn filed a complaint for divorce in September of 2000. On December 11, 2000, a case management officer (*Carlson, CMO*) issued an interim order that placed the children's primary residence with Dawn at the marital home. As a result of a mediation at which both parties were represented, the Cloutiers signed a "points of agreement" form that resolved the majority of the issues in dispute. Among the matters agreed upon was an arrangement for their home to be sold and for the proceeds to be used to satisfy certain debt. The agreement was never incorporated into a court order. Immediately after the mediation session, the CMO held a pretrial conference. In its pretrial order, the CMO listed only a few matters remaining in dispute, including allocation of pension benefits, personal property and debt, and coverage of medical insurance for Dawn.

[¶ 5] The District Court began the trial on the 2nd of August. At the beginning of trial, Dawn requested that the court disregard the mediation agreement and award sole possession of the home to her. Initially, the court declined to disregard the agreement and precluded real estate from becoming an issue. As the evidence developed, however, the court concluded that the issue of the disposition of the real estate was intricately intertwined with the resolution of the matters remaining in dispute. Therefore, the court postponed the hearing until October 16 to allow each party to gather more evidence of their financial situations. The court specifically stated at the August 2 hearing and in the resulting order that disposition of the real estate would be an issue to be resolved at the October hearing. Lorenzo objected to the court's ruling and the court overruled this objection. The parties returned to trial on October 16, and the court ultimately awarded the home and all rental income to Dawn. After the court denied Lorenzo's motion for further findings of fact, he appealed the divorce judgment.

## II. DISCUSSION

[¶ 6] Lorenzo argues that the trial court erred when it awarded the home and rental income solely to Dawn and disregarded the mediated "points of agreement," which included a different disposition of the real estate. He also argues that it was unfair to allow Dawn to litigate the issue of the real estate because he was not given notice and adequate time to prepare for trial of that issue.

[¶ 7] The question presented is whether, and under what circumstances, a judge may set aside a pretrial agreement between parties to a divorce and award an item of property in contravention of that agreement. Preliminarily, we note that the nature of the proceeding is important to the analysis. This is not a general civil matter where the parties are ordinarily free to enter into any agreement so long as it is not coerced. Rather, this is a family matter, where the court is called upon to exercise its authority in equity, and may be required to act as *parens patriae* if children are involved. *See Rideout v. Riendeau*, 2000 ME 198, ¶ 27, 761 A.2d 291, 302. Thus a pretrial agreement between parties to a divorce may be treated somewhat differently than a settlement in a civil suit.

[¶ 8] Further, the fact that the pretrial agreement was entered into in the context of a court mandated mediation does not give the agreement the imprimatur of a court order. A family matter agreement does not become an order of the court until it is presented to and approved by the court.[1] 19–A M.R.S.A. § 251(3) (1998) ("An agreement reached by the parties through mediation on issues *must* be . . . presented to the court for approval as a court order.") (emphasis added); *see also Bennett v. Bennett*, 587 A.2d 463, 464 (Me.1991); *Beane v. Bisson*, 551 A.2d 1386, 1387 (Me.1989); JON D. LEVY, MAINE FAMILY LAW § 5.5 (2000 ed.) ("[A] mediation agreement is in every instance subject to court approval and should not, therefore, constitute a legally enforceable contract independent of its approval by the court.") (footnotes omitted). As is often the case in the progression of divorce proceedings, the mediated partial agreement between the Cloutiers had not been presented to and approved by the court or a CMO prior to trial. Therefore,

---

1. A case management officer is also authorized to approve agreements of the parties in a divorce proceeding, *see* M.R. Fam. Div. III(F), and such an approval would have the same effect as a judicial approval.

the agreement in this case was not enforceable as a court order.

[¶ 9] Nonetheless, an agreement reached prior to trial does represent a method by which the parties may identify matters that are not disputed and by which the parties may be assured that those matters will not be the subject of litigation. Thus, in the normal course, the court should honor an agreement reached by the parties. This assures that mediation is an effective tool for dispute resolution, and prevents the parties from unilaterally reopening matters that have been resolved. Therefore, ordinarily, when the parties have agreed to the resolution of some or all of the matters previously in dispute, the court will not address those matters at any trial on the remaining disputed issues, and will not, without more, allow the agreed upon matter to be litigated.

[¶ 10] When the court, acting within its discretion, concludes that there is a basis for setting aside an agreement that has not been incorporated in a court order, however, it may do so. *See Tapman v. Tapman,* 544 A.2d 1265, 1267 (Me.1988) (finding trial court not bound by child custody and support agreement); *Wardwell v. Wardwell,* 458 A.2d 750, 752 (Me.1983) (finding divorce court must "determine that the property settlement is fair and equitable"); *Coe v. Coe,* 145 Me. 71, 74, 71 A.2d 514, 515 (1950) (holding agreements are valid if they are "fairly made and in a manner not against public policy").

[¶ 11] Because the court will not set the agreement aside without cause, we address several factors that may be considered in making the decision to enforce or set aside a pretrial agreement. The court should consider, among other things, whether the parties have agreed to set aside the agreement; whether leaving the agreement in place would result in a significant inequity; whether there has been an unanticipated and substantial change in the parties' circumstances since the creation of the agreement; whether the court can resolve the matters not contained within the agreement in a reasonable manner in light of the parties' agreed upon resolution of the settled matters; and what affect the enforcement or setting aside of the agreement would have on the best interests of the children.

[¶ 12] Once the court determines that an agreement must be set aside, there may be delay in resolving the entire matter and there may be further expenses or detriment to the children inherent in returning an issue to disputed status. Thus, in determining whether to reopen a previously agreed upon matter, the court should consider whether the expense and delay occasioned by setting the agreement aside is outweighed by the importance of the issue to be returned to litigation.

[¶ 13] In the context of the Cloutiers' disputes regarding the allocation of their debt, particularly regarding the debt related to the marital home, the court did not exceed the bounds of its discretion in setting aside the parties' agreement to sell the home. The court had ample reason to conclude that selling the Cloutiers' home and dividing the profits would be manifestly unjust. The court was concerned that the Cloutiers' equity in the home was not nearly enough to pay off any of their large debt. Since this was the home in which the children have always lived, one of the main reasons for allowing Dawn to retain the house was to keep the children in their current school district. Further, Dawn's ability to pay for alternative housing, in relation to Lorenzo's, was insufficient. Given the limited benefit that selling the house would have had on the debt and the substantial detrimental effect it would

have had on the children, the court acted well within the bounds of its discretion when it set aside the parties' agreement to sell the marital home.

[¶ 14] Lorenzo's argument that he was unfairly disadvantaged by the court's decision to set a part of the agreement aside is without merit. Indeed, the court's approach here is instructive. At the end of the August 2 hearing, the court stated on the record that the disposition of the real estate would be an issue to be litigated at the October 16 hearing. The court gave further notice to Lorenzo in its written order from the August 2 hearing. The time between the two hearings was more than sufficient to prepare for litigation of the real estate issue. *See Armstrong v. Manzo,* 380 U.S. 545, 550–52, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) (finding petitioner did not receive adequate notice).

[¶ 15] Lorenzo's alternative argument that the court erred when it disregarded the pretrial order that did not list real estate as an issue in dispute also fails. *See Chadwick–BaRoss, Inc. v. Martin Marietta Corp.,* 483 A.2d 711, 714 (Me.1984) ("While explicit listing of all issues to be litigated is by far the better practice, it is not appropriate that the rule be interpreted with technical strictness in all circumstances."); *Atkins v. Atkins,* 376 A.2d 856, 858 (Me.1977) ("[T]he pretrial order was not intended to become 'hoops of steel to bind the parties to frozen issues.' ") (citations omitted).

[¶ 16] Lorenzo presents several other arguments from which we discern no error.

The entry is:

Judgment affirmed.