2003 ME 153

**Phyllis M. SHAW**

v.

**John P. SHAW.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Nov. 25, 2003.

Decided: Dec. 23, 2003.

Alan F. Harding, Esq., Hardings Law Offices, Presque Isle, for plaintiff.

Richard L. Currier, Esq., Currier & Trask, P.A., Presque Isle, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Phyllis M. Shaw appeals from a divorce judgment entered in the District Court (Caribou, *Daigle, J.*). She contends that the court abused its discretion by (1) ordering a distribution of the marital residence and mortgage debt that was contrary to the parties' agreement, without affording the parties an opportunity for an evidentiary hearing on the issue; and (2) relying on its distribution of the marital residence as justification for denying Phyllis's claim for spousal support. Because we agree with Phyllis's first contention, we vacate the judgment, remand for further hearing, and do not reach Phyllis's second contention.

## I. BACKGROUND

[¶ 2] Phyllis initiated this action for divorce against John in 2002 after ten years of marriage. Their attorneys informed the court at a prehearing conference that Phyllis and John had agreed that they would share parental rights and responsibilities for their three minor children who would reside primarily with Phyllis; that John would convey his interest in the jointly-owned marital residence to Phyllis by quitclaim deed and she would assume sole responsibility for the mortgage payments and other expenses; and that they had agreed to the division of nearly all of their personal property. The issues that remained in dispute were child support, allocation of debt, division of pensions, spousal support, and attorney fees.

[¶ 3] The divorce hearing was held on October 21, 2002, and the court received evidence with respect to the issues still in dispute. During the hearing John testified as to the agreement that Phyllis would receive the marital residence subject to the outstanding mortgage.[1] At the close of trial, counsel for both parties agreed to prepare and submit a proposed divorce judgment that would set forth the terms of all agreements reached by the parties, and identify all issues that remained unresolved. Counsel subsequently submitted a proposed divorce judgment that reflected the parties' agreement as to all issues, except the identified issues of spousal support and attorney fees. The proposed judgment included the parties' agreement that Phyllis would receive the marital residence as her sole property and assume sole responsibility for the outstanding mortgage.

[¶ 4] In response to the proposed judgment, the court sent a letter to both attorneys stating "[t]he only unresolved issues are spousal support and attorney's fees," and inquiring whether counsel "intend[ed] to file written arguments relative to said issues[.]" Soon thereafter, Phyllis's and John's attorneys submitted letters setting forth their positions regarding spousal support and attorney fees.

[¶ 5] In response to the attorneys' letters, the court again wrote to counsel setting forth an alternative proposal under which Phyllis and John would remain joint owners of the marital residence as tenants in common until the youngest child reached eighteen or until Phyllis decided to move, whichever occurred first, upon which the parties would sell the home and split the proceeds; that each would pay one-half of the monthly mortgage payments; that neither would receive spousal support; and each would be responsible for their own attorney fees. The letter stated that "[i]f the same (or a variation thereof) is not acceptable to both, please advise. A judgment will then issue which will adjudicate the unresolved alimony and attorney's fees issues." John agreed to the court's proposal, but Phyllis disagreed, citing in her letter several reasons why the perpetuation of the parties' joint ownership of the marital residence and the denial of spousal support were unjustified.[2]

[¶ 6] Thereafter, the court entered a divorce judgment that adopted the approach described in the court's letter, including the provision that the parties would remain joint owners of the marital residence as tenants in common, and denying Phyllis's claims for spousal support and attorney fees. In response, Phyllis filed a motion for findings of fact and conclusions of law, which the court granted.[3] The court issued findings and conclusions regarding the issues of spousal support and attorney fees, but not regarding its disposition of the marital residence. Phyllis appropri-

---

1. Phyllis was not questioned about the agreement at the hearing.

2. One of the several reasons cited in the letter for Phyllis's opposition to the court's proposal was that:

   Mr. and Mrs. Shaw have been unable to agree on most issues during their divorce. The sharing of a mortgage indebtedness and home ownership would be a potential conformation of a married relationship which a divorce should end rather than perpetuate for this couple. That the De-

fendant has allowed the mortgage on his children's home to reach the brink of foreclosure fully reveals the lack of common interests of the parties.

3. In its findings and conclusions, entered on April 23, 2003, the court acknowledged that at the conclusion of the hearing, the "sole issues unresolved by the parties, and requiring determination by the Court were pertaining to Plaintiff's prayer for alimony, and Plaintiff's request that Defendant pay all or a portion of attorney's fees incurred by her."

ately next moved for reconsideration of the judgment and of the court's findings of fact and conclusions of law, stating that the court had "received no evidence as to the impact of this Court's significant alteration of the parties' agreement" and that the court had not made "findings with respect to this Court's alteration of the parties' agreement on the division of real estate." The court denied the motion. Phyllis appeals from the court's judgment.

## II. DISCUSSION

[¶ 7] Phyllis contends that the court's denial of her motion for reconsideration was an abuse of discretion because it denied her the opportunity to present evidence regarding the disposition of the marital residence and mortgage debt. We review a court's denial of a motion for reconsideration for an abuse of discretion. *Ten Voters of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 11, 822 A.2d 1196, 1201.

[¶ 8] Motions for reconsideration are restricted to situations in which the motion is "required to bring to the court's attention an error, omission or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). Rule 7(b)(5) is intended to deter disappointed litigants from seeking "to reargue points that were or could have been presented to the court on the underlying motion." M.R. Civ. P. 7(b)(5) advisory committee's note to 2000 amend.

[¶ 9] The circumstances of this case establish that Phyllis's motion was not merely an effort to reargue issues that were or could have been presented during the trial that preceded it. As a consequence of the process followed by the court, Phyllis never had an opportunity to present evidence relevant to the disposition of the marital residence and mortgage because that issue was not disputed at trial, and there was no indication prior to the close of evidence that the court would not adopt the parties' agreement regarding the residence and mortgage.

[¶ 10] As we recognized in *Cloutier v. Cloutier*, 2003 ME 4, 814 A.2d 979, which was decided after the entry of the divorce judgment in this case, "an agreement reached prior to trial does represent a method by which the parties may identify matters that are not disputed and by which the parties may be assured that those matters will not be the subject of litigation." *Id.* ¶ 9, 814 A.2d at 983. In *Cloutier*, the parties signed a pretrial mediation agreement on some, but not all, issues in dispute. *Id.* ¶ 4, 814 A.2d at 981. The agreement included a provision that their home would be sold and the proceeds applied to outstanding debts. *Id.* At the outset of the divorce hearing, the wife requested the court to disregard the mediation agreement and award her sole possession of the home. *Id.* ¶ 5, 814 A.2d at 982. As the hearing proceeded, the court concluded that the disposition of the house was "intricately intertwined with the resolution of the matters remaining in dispute" and, therefore, continued the hearing to a future date to "allow each party to gather more evidence of their financial situations." *Id.* The court specifically alerted the parties at the conclusion of the first hearing and in a written order that the disposition of the house would be an issue to be considered at the continuation of the hearing. *Id.*

[¶ 11] We determined that the court did not abuse its discretion in setting aside the parties' agreement regarding the house because the court had ample reason to find that selling the Cloutiers' home and dividing the profits would be manifestly unjust. *Id.* ¶ 13, 814 A.2d at 983. By giving the parties notice both at the end of the first hearing and in a written order that preced-

ed the second hearing that the disposition of the house would be an issue when the trial resumed, the court assured that neither party was unfairly disadvantaged by its decision to disregard the parties' agreement regarding the home. *Id.* ¶ 14, 814 A.2d at 984.

[¶ 12] As we concluded in *Cloutier*, when a court intends to exercise its discretion to reject all or a portion of a divorce-related agreement and the parties do not have reason to anticipate that the court would exercise that discretion, the court must give the parties notice of its intention and an opportunity to present additional evidence on the issue or issues.[4] Here, Phyllis had neither prior notice of the court's intention to disregard the agreement regarding the marital residence and mortgage debt, nor an opportunity to present additional evidence. The court's denial of Phyllis's motion for reconsideration deprived her of such an opportunity and was, therefore, an abuse of discretion.

The entry is:

The divorce judgment is vacated; case remanded to the District Court for further proceedings in accordance with this opinion.

---

4. In *Cloutier*, we addressed the factors that should be considered by the court in the exercise of its discretion as follows:

> Because the court will not set the agreement aside without cause, we address several factors that may be considered in making the decision to enforce or set aside a pretrial agreement. The court should consider, among other things, whether the parties have agreed to set aside the agreement; whether leaving the agreement in place would result in a significant inequity; whether there has been an unanticipated and substantial change in the parties' circumstances since the creation of the agreement; whether the court can resolve the matters not contained within the agreement in a reasonable manner in light of the parties' agreed upon resolution of the settled matters; and what affect the enforcement or setting aside of the agreement would have on the best interests of the children.
>
> Once the court determines that an agreement must be set aside, there may be delay in resolving the entire matter and there may be further expenses or detriment to the children inherent in returning an issue to disputed status. Thus, in determining whether to reopen a previously agreed upon matter, the court should consider whether the expense and delay occasioned by setting the agreement aside is outweighed by the importance of the issue to be returned to litigation.

*Cloutier,* 2003 ME 4, ¶¶ 11–12, 814 A.2d at 983.

We have also previously addressed the exercise of the divorce court's discretion associated with an order requiring divorcing spouses to continue as joint owners of property with shared postdivorce responsibilities. *See Smith v. Smith,* 1997 ME 29, ¶ 4, 690 A.2d 970, 972 (stating that, to avoid future conflicts between the parties, courts should avoid judgments that provide "lingering connection[s] between two parties who obviously wish to sever their ties") (internal quotations omitted).