2011 ME 12

**Mark F. WANNER**

v.

**Rebecca S. WANNER.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2010.
Decided: Jan. 18, 2011.

Christopher J. Whalley, Esq. (orally), Ellsworth, ME, for Rebecca S. Wanner.

Stephen Collier, Esq. (orally), Ellsworth, ME, for Mark F. Wanner.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Rebecca S. Wanner appeals from those portions of a divorce judgment entered by the District Court (Ellsworth, *Staples, J.*) awarding her spousal support and declining to award her attorney fees. Rebecca contends that the court erred in considering those issues de novo instead of accepting the provisions of an earlier judicial separation decree that incorporated a separation agreement negotiated by the parties. She also asserts that the court erred in calculating her income. Mark F. Wanner argues that the court correctly ruled that pursuant to 19–A M.R.S. § 851(12)(C) (2010),[1] the divorce judgment

1. The statute provides:

**12. Modification and termination of separation decrees.** A separation decree

terminated the separation decree, allowing the court to consider financial issues de novo. We vacate the judgment.

## I. BACKGROUND

[¶ 2] Mark and Rebecca Wanner were married in August 1993 and are the parents of two minor children. In April 2008, Mark filed a complaint for judicial separation in the District Court. Assisted by separate counsel, Mark and Rebecca negotiated a comprehensive, detailed separation agreement that each signed on June 6, 2008. The agreement included provisions for: (1) shared parental rights and responsibilities; (2) division of the parties' real estate, tangible and intangible personal property, and indebtedness; (3) spousal support to Rebecca of $1400 per month for six years, subject to adjustment if certain triggering events occurred; and (4) Mark to pay all attorney fees involved in the judicial separation action and any future divorce proceeding.

[¶ 3] The agreement further provided that neither party would file for divorce for one year absent mutual agreement, and specified:

> The parties agree that this Agreement will be binding upon and enforceable by each of them, and that in the pending separation proceedings, the Court shall be asked to ratify and confirm this Agreement in its entirety and to incorporate the same by reference in the Separation Decree issued by said Court, and it shall be binding upon the parties hereto and shall have the force and effect and be enforceable to the same degree and in the same manner as though the same were fully set forth and contained in said Separation Decree. The Agreement shall not be merged in any such decree or judgment, but shall survive the same and the parties hereto may enforce the terms of this Agreement by virtue of said decree, or independently of said decree.

[¶ 4] On June 16, 2008, the court (*Jordan, M.*), following a hearing, entered a judicial separation decree that incorporated the parties' separation agreement.[2] One month later, notwithstanding the one-year waiting period specified in the separation agreement, Mark filed a complaint for divorce.

[¶ 5] By agreement, the court (*Staples, J.*) held a bifurcated hearing in the divorce case. During the first hearing it considered only parental rights and responsibilities issues, reserving the issues of child

---

may be modified or is terminated as follows.

    **A.** Upon motion by either party served in accordance with the Maine Rules of Civil Procedure, Rule 4, and after notice and hearing, the court may order the modification of a separation decree upon showing of a substantial change of circumstances justifying the modification. However, that portion of the separation decree disposing of the parties' property in accordance with section 953 is not subject to modification and remains in full force.

    **B.** Upon the filing of a written declaration signed and acknowledged by both parties stating that they have resumed marital relations, the separation decree terminates. However, that portion of the separation decree disposing of the parties' property in accordance with section 953 is not subject to termination and remains in full force.

    **C.** Upon entry of a final judgment of divorce between the parties, the separation agreement terminates. However, that portion of the separation decree disposing of the parties' property in accordance with section 953 is not subject to termination and remains in full force.

19–A M.R.S. § 851(12) (2010).

**2.** In March 2009, the separation decree was amended in a minor way that is of no significance to this appeal.

support, spousal support and attorney fees. The court's March 31, 2009, memorandum of decision following this hearing, reduced to a partial judgment entered July 27, 2009, is not at issue in this appeal. The memorandum did, however, make clear the court's view that it was not bound by the terms of the parties' separation agreement, except for the provisions dividing their property:

> The provisions of that agreement are not binding upon the issues now before the Court and once a Divorce Judgment is issued the Judicial Separation becomes terminated except for the division of property pursuant to Title 19–A, Section 851.

[¶ 6] At the second hearing concerning financial issues, Mark testified regarding his changed financial circumstances since the settlement agreement was signed. The court reiterated its position that the settlement agreement was not controlling in the divorce case:

> COURT: [W]e should get one thing very clear. That ... settlement agreement is not binding on the issue of spousal support.
>
> MARK'S ATTORNEY: Yes, your Honor ... so, we do not need to prove a substantial change in circumstances—
>
> COURT: No, not at all.... [W]e're in the divorce now....

[¶ 7] The parties stipulated that for the purpose of determining child support, Mark's annual income was $75,577, and Rebecca's annual income was $19,000. The parties and the court agreed that the incomes used to calculate child support need not necessarily match the incomes the court used to determine spousal support, and Mark and Rebecca each testified concerning their income, job skills, and employment history. Following the hearing, both parties submitted written argument. With the issue of child support

essentially resolved by the stipulations entered into at trial, Mark, primarily arguing that there had been a substantial change of circumstances pursuant to 19–A M.R.S. § 851(12)(A) (2010), urged the court to award no spousal support and no attorney fees. Rebecca relied on the same standard but urged a different result, arguing *inter alia* that because there had not been a showing of a substantial change of circumstances, the parties' original separation agreement should be enforced.

[¶ 8] The court issued a memorandum of decision on May 27, 2009. It first ordered child support pursuant to the guidelines, using the parties' income stipulations entered for that purpose. On the question of spousal support, the court again ruled that it would consider the issue de novo notwithstanding the separation agreement. It found that Mark's income for spousal support purposes was the same as his stipulated income for child support purposes, or $75,577 per year. After noting the evidence presented concerning Rebecca's employment history through 2005, when she had average earnings of $23,494 per year, along with her expertise in the field of lighting design and her ownership of a not-yet-profitable lighting business that she was attempting to operate, the court found that "she has the capacity to earn more [than $19,000 annually] once she returns fully to the work force." It awarded Rebecca transitional spousal support of $1000 per month for three years. Finally, the court declined to award Rebecca attorney fees based on "her earned income," combined with the child support and spousal support she would receive pursuant to the divorce judgment.

[¶ 9] Rebecca moved for findings of fact and conclusions of law, asserting, as she does here, that the court erred in considering financial issues de novo because (1) 19–A M.R.S. § 851(12)(C) acted

to terminate the parties' separation *agreement* upon entry of a divorce judgment, but not the judicial separation decree incorporating the agreement; and (2) Mark was therefore required to show a substantial change of circumstances pursuant to section 851(12)(A) before the court could modify the separation decree in its divorce judgment. Mark objected to Rebecca's proposed findings, contending, as he does here, that the court properly addressed all issues apart from the parties' property division de novo because section 851(12)(C) terminated both the separation agreement and the separation decree when the court entered its divorce judgment. He also moved for additional findings.

[¶ 10] The court denied both motions, reiterating its position that the separation agreement was not binding in the divorce case and ruling that its previous findings were otherwise sufficient. On October 6, 2009, it entered a partial judgment resolving the issues of child support, spousal support, and attorney fees consistent with its memorandum of decision. Rebecca moved for reconsideration; the court denied the motion and awarded Mark attorney fees incurred in opposing it. This appeal followed.

## II. DISCUSSION

### A. Effect of the Divorce Judgment

■ [¶ 11] Our first task is to determine whether entry of the divorce judgment terminated both the judicial separation decree and the parties' separation agreement, as the court found,[3] or whether that event terminated the agreement but not the decree incorporating the agreement, as Rebecca contends. The governing statute provides, "Upon entry of a final judgment of divorce between the parties, the separation agreement terminates." 19–A M.R.S. § 851(12)(C). Applying the plain meaning of that language, the Wanners' separation agreement terminated when the court entered its divorce judgment. *See In re Alivia B.*, 2010 ME 112, ¶ 9, 8 A.3d 625, 628 ("In interpreting a statute, we first look to its plain meaning.").

[¶ 12] Although section 851(12)(C) is silent concerning the effect of the divorce judgment on the separation decree, two considerations persuade us that the decree also terminated when the judgment was entered. First, the key jurisdictional prerequisite that must be satisfied before the District Court may enter a separation decree is that "a married person" or "a married couple" files a petition.[4] 19–A M.R.S. § 851(1–A) (2010). The resulting decree governs the parties' legal relationship while they remain married, but separated. If they end the separation and resume their marital relationship, then the separation decree, deprived of its essential purpose, terminates. 19–A M.R.S. § 851(12)(B) (2010). Likewise, if the marriage ends through the entry of a divorce judgment, then the purpose for the separation decree vanishes, as does the jurisdictional prerequisite that the parties governed by the decree be married. Absent both its central purpose and requisite jurisdictional foundation, the separation decree terminates as a matter of law at the moment a divorce judgment ends the marriage it governs.

---

3. There is no dispute that the "portion of the separation decree disposing of the parties' property in accordance with [19–A M.R.S.] section 953 is not subject to termination and remains in full force." 19–A M.R.S. § 851(12)(C).

4. A casual examination of 19–A M.R.S. § 851 (2010) reveals that it explicitly applies to a "spouse" or "spouses" involved in a marriage; it clearly does not apply to unmarried parties. *See, e.g.,* 19–A M.R.S. § 851(1–A)(A), (5), (6), (8), (9), (11), (14).

[¶ 13] Second, we conclude that section 851(12), viewed as a whole, demonstrates that the Legislature understood that the separation decree terminates upon the issuance of a judgment of divorce when it used the term "separation agreement" in section 851(12)(C), but not in paragraphs (A) or (B). *See In re Alivia B.*, 2010 ME 112, ¶ 10, 8 A.3d at 628 ("In construing a statute, the provision at issue must be considered within the broader context of the entire statutory scheme."). Paragraph (A) specifies when a court may modify a continuing "separation decree," and, as discussed above, paragraph (B) provides that a "separation decree" terminates when the parties end their separation and resume their marital relationship. 19–A M.R.S. § 851(12)(A), (B). In neither case is it necessary to specify the fate of a separation agreement, because either the decree incorporating it remains in effect, or it becomes moot when the parties are no longer separated.

[¶ 14] However, when a divorce judgment ends the marriage and the separation decree terminates, the status and enforceability of the separation agreement is called into question. Although the parties continue to be considered legally separated by operation of the divorce judgment, the separation decree that incorporated the separation agreement's terms is a legal nullity. Without a clear statutory pronouncement, it could be argued that the separation agreement somehow survives the divorce. It is therefore logical and appropriate that the Legislature found it necessary to specify what happens to the separation agreement after the entry of a divorce judgment. Section 851(12)(C) explicitly removes any uncertainty. Thus, upon the entry of a judgment of divorce,

both the separation agreement and the separation decree, with the exception of provisions disposing of the parties* property in accordance with 19–A M.R.S. § 953, terminate.

## B. Role of the Separation Agreement

[¶ 15] Although we conclude that both the separation agreement and the separation decree incorporating it terminated at the moment the divorce judgment was entered, that does not mean that the parties' agreement was entitled to no weight in the process leading to that point.

[¶ 16] It is clear that the agreement in this case was intended to operate as a separation agreement. What is less clear is whether it was also intended to operate as a settlement agreement incident to divorce in the event either Mark or Rebecca elected to proceed with an action for divorce. There is support in the body of the agreement for the view that the parties intended it to operate as both a separation agreement and a settlement agreement incident to divorce.

[¶ 17] The agreement was comprehensive, addressing every issue that would need to be resolved in the event of a divorce, and it established a spousal support obligation for a six-year period, far longer than the one-year period during which the parties agreed neither would initiate a divorce absent a mutual agreement.[5] In addition, the agreement provided that, "Husband shall be responsible for all attorneys' fees, legal costs, and court costs incurred for or related to ... any action for Divorce by either party as a result of any Legal Separation, whether before or after the effective date of this

---

5. The parties agreed: "[N]either party will bring an action for divorce before one year from the effective date of this Agreement unless by mutual written and notarized consent of Husband and Wife."

Agreement."[6] The agreement also established that "[b]oth parties [would] retain rights to any and all inheritances that each is entitled to until a Final Judgment for Divorce is awarded by the court." Finally, the agreement contained an anti-merger provision, establishing that it would not be merged in any Separation Decree "but shall survive the same and the parties hereto may enforce the terms of this Agreement by virtue of said decree, or independently of said decree."

[¶ 18]   The preceding provisions of the separation agreement establish that the parties may have intended that it would survive the separation decree as an independent instrument, and remain binding in the event of a divorce unless the terms were renegotiated by the parties. If they did so intend, "in the normal course, the court should honor an agreement reached by the parties," and "will not set the agreement aside without cause." *Cloutier v. Cloutier*, 2003 ME 4, ¶¶ 9, 11, 814 A.2d 979, 983. The presumption that the parties' valid pretrial agreement will be enforced "prevents the parties from unilaterally reopening matters that have been resolved." *Id.* ¶ 9, 814 A.2d at 983.

[¶ 19]   The District Court did not consider whether the parties intended the separation agreement to operate as both a separation agreement and as a settlement agreement incident to divorce. If the agreement served this dual purpose, its provisions would govern the award of spousal support, unless the court also finds that the spousal support provision was

manifestly unjust, *see id.*, ¶ 10, 13, 814 A.2d at 983, or that the amount of support should be modified based on a substantial change in circumstances, *see Pettinelli v. Yost*, 2007 ME 121, ¶ 14, 930 A.2d 1074, 1079.[7] Accordingly, we vacate the judgment and remand for the court to make these determinations.

## C.   Determination of Rebecca's Income

■ [¶ 20]   In the event the court determines on remand that the agreement was not intended to operate as a settlement agreement incident to divorce or, if it was, a substantial change in circumstances has occurred and the amount of support or attorney fees should be re-determined, it will need to determine the parties' incomes. Accordingly, we address Rebecca's assertion that the court erred in determining her income.

[¶ 21]   At the second hearing concerning financial issues, Rebecca stipulated that her income was $19,000 per year for child support purposes, but did not so stipulate for the purpose of determining spousal support. In its discussion of spousal support, the court imputed unspecified additional income to her in finding that, "Although the parties stipulated for the purposes of child support that [Rebecca's] income is $19,000.00, her work history . . . and resume . . . support a finding that she has the capacity to earn more once she returns fully to the work force." The court then awarded her transitional spousal support of $1000 per month for three years.

---

**6.**  The agreement also established how attorney fees and costs would be paid if either party wanted to "renegotiate the terms of this Agreement for the purpose of creating a new Agreement or terms of Divorce." This provision may be interpreted as suggesting that the agreement was not intended serve as a final divorce settlement agreement because it was explicitly subject to renegotiation. The opposite interpretation is also possible: that is, that the agreement was intended to be a final expression of the parties' agreement unless they elected to renegotiate it.

**7.**  This analysis also applies to Rebecca's challenge to the portion of the divorce judgment declining to award her attorney fees.

[¶ 22] The court's underlying assumption that the income used to determine child support need not be equal to the income used to determine spousal support is correct.[8] However, the court "had a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." *Jarvis v. Jarvis*, 2003 ME 53, ¶ 22, 832 A.2d 775, 780 (quotation marks omitted). The court's open-ended, non-specific finding that Rebecca "has the capacity to earn more" than $19,000 satisfies neither requirement. *See id.* (holding that imputing income to a party after finding that his income "was unclear" was error). Because the court's findings are insufficient on this point, we also remand for a new determination of the parties' incomes when the court considers spousal support.

The entry is:

Numbered paragraphs (3) and (4) of the partial judgment dated October 6, 2009, are vacated. Remanded for further proceedings consistent with this opinion.

---

8. In calculating child support, a court may only impute additional income to a party "when the party voluntarily becomes or remains unemployed or underemployed," 19–A M.R.S. § 2001(5)(D) (2010), whereas in calculating spousal support a court may impute income based on the less-restrictive "employ-ment history and employment potential" or "income history and income potential" of a party, 19–A M.R.S. § 951–A(5)(D), (E) (2010). *See Payne v. Payne*, 2008 ME 35, ¶ 11 n. 5, 942 A.2d 713, 716; Levy, *Maine Family Law* § 8.2.1 at 8–12 (6th ed.2009).