MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 14
Docket:        Yor-23-59
Argued:        October 4, 2023
Decided:       January 31, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

HEATHER KEEP

v.

CHRISTOPHER INDORF

STANFILL, C.J

[¶1]  Christopher Indorf appeals from a partition judgment entered by the District Court (Biddeford, *Tice, J.*) dividing real estate he and Heather Keep owned as joint tenants.  Indorf argues that the court abused its discretion by setting aside a partial settlement agreement placed on the record in an earlier judicial settlement conference.  Because we agree that the settlement agreement was valid and enforceable, we vacate the judgment and remand for the court to determine the meaning of the agreement and partition the property accordingly.

## I.  BACKGROUND

[¶2]  The following facts are taken from the record and the trial court findings, which are supported by competent evidence in the record.  *See Low v.*

2

*Low*, 2021 ME 30, ¶ 2, 251 A.3d 735.  Keep and Indorf were unmarried domestic partners and have one child together.  In October 2015, they purchased a residence in Saco as joint tenants for $345,000.  Indorf contributed $37,327 of his own funds for the down payment and closing costs; Keep did not contribute any funds to the initial purchase.  The remainder of the purchase was funded with a loan secured by a mortgage on the property; both parties were liable on the note and mortgage.  When the parties purchased the property, they agreed that in the event of a sale, Indorf would receive from any sale proceeds an amount equal to his down payment before any funds were divided between the parties.

[¶3]  The relationship broke down and Keep moved out in May 2019, at which point the home was valued at $377,000.  Indorf stayed in the home and assumed sole financial responsibility for it from that point forward.  At the time, the mortgage balance was $290,413.64.  Keep incurred her own housing costs after she moved out.

[¶4]  Keep filed a complaint for equitable partition on May 9, 2019.  The parties also litigated a parental rights and responsibilities matter, a claim for breach of contract regarding the down payment made for the house, and a small claims case regarding personal property.  Although never formally

consolidated, the four cases were jointly scheduled for a status conference (*Moskowitz, J.*) on October 3, 2019.  The status conference morphed into a judicial settlement conference for all four causes of action.

[¶5]  The parties did not settle everything, but they came to an interim agreement in the family matter that Keep's attorney read the into the record.  Then, after telling the court that the parties were "segueing over to the partition matter," Keep's attorney stated,

> The parties have agreed for valuation and division of any expenses associated with the home, that it – they will use May 1st as the date that Mr. Indorf had fully assumed all responsibility for the residence.  Likewise, Mr. Indorf will provide indemnification for any construction on the house that's presently occurring . . . . Mr. Indorf will provide general information about the scope of construction that's currently happening at the house and the expected end date.[1]

[¶6]  While the partition action was pending, Indorf's claim for breach of contract, which concerned the down payment, was dismissed on Keep's motion for judgment on the pleadings.  *Indorf v. Keep*, 2023 ME 11, ¶ 7, 288 A.3d 1214; *see* M.R. Civ. P. 12(c).  The contract action was then appealed to us.  *See Indorf*, 2023 ME 11, 288 A.3d 1214.  On January 31, 2023, we vacated the dismissal of the contract action and remanded with instructions to the trial court "to use all

---

[1]  At some point after Keep moved out, Indorf's mother moved into the home, and Indorf and his mother began construction of an addition without Keep's consent.

appropriate trial management tools and practices available to resolve any remaining issues that were not addressed in its judgment entered in Keep's partition action." *Id.* ¶¶ 11, 14.

[¶7] The partition action was set for trial on September 1, 2022, with the contract action still pending before us. Before trial, Indorf moved to exclude evidence of the property's increase in value after May 1, 2019, based on the October 2019 settlement agreement. The court denied the motion, deciding that the parties could present evidence of the property value because the existence of the agreement was at issue in the hearing.

[¶8] Following the September 2022 bench trial, the court (*Tice, J.*) entered a final judgment in the partition action on December 9, 2022. Keep filed a motion to correct a clerical error on December 20, 2022. That motion was granted on December 21, 2022, and an amended judgment was entered the same day. Indorf filed a motion to reconsider and a motion for amended and further factual findings on December 22, 2022.

[¶9] On February 8, 2023, the partition court granted Indorf's motions in part, denied them in part, and entered a second amended judgment that incorporated additional factual findings.

[¶10]   The evidence at the partition trial showed that during the pendency of the case, the home's value increased dramatically, largely because of the COVID-19 pandemic.  In May 2019, the property was worth $377,000.  By July 2021, the property, which then included an $85,000 in-law suite, was valued at $610,000.  On the day of the hearing in 2022, the home was worth $700,000, and the mortgage balance was $268,642.59.  Indorf had made $92,891.41 in mortgage payments between May 2019 and August 2022.

[¶11]  The contract and partition actions both raised the issue of whether there was any agreement concerning reimbursement of the down payment.  Because the contract action was still pending on appeal, the partition court decided the questions regarding the existence and scope of the parties' agreements regarding the down payment and division of the real estate.  The court first found that Indorf agreed to fund the purchase of the property with his own funds only "with the understanding that he would get the money back in the event the home was sold. . . . Therefore, the court credit[ed] [Indorf] with the $37,327.00" down payment. [2]

---

[2] Although the court relied on *McCracken v. McCracken*, 617 A.2d 1034 (Me. 1992) to make the finding that the down payment agreement exists, Keep and Indorf were not married, and the property was not marital property.  Thus, there was no gift presumption for Indorf to overcome.  *Cf. id.* at 1035

[¶12]  The court further found that the parties had a second agreement:

> As a result of the judicial settlement conference, the parties put on the record with the court (*Moskowitz, J.*) an agreement that for valuation and division of any expense associated with the home, the parties would use the May 2019 property valuation, Defendant's sole possession and financial responsibility of [the property] began May 1, 2019 and Defendant would provide indemnification for any construction on the house that was occurring (i.e. the construction for the mother-in-law suite). Defendant executed an indemnification agreement on August 11, 2020, 10 months after the judicial settlement agreement.

The court further found that this agreement was fair and reasonable for some purposes but was also missing terms and "lack[ed] specificity and [was] ambiguous."[3]

[¶13]  Rather than resolve any ambiguity, the court relied on *Cloutier v. Cloutier*, 2003 ME 4, 814 A.2d 979, to set aside the October 2019 agreement in

---

("[A]n interspousal transfer of real estate during marriage creating a joint tenancy gives rise to a presumption that a gift to the marital state was intended.").

Instead, "joint tenants own equal undivided shares even though their initial contributions may have been unequal." *Bradford v. Dumond*, 675 A.2d 957, 961 (Me. 1996).  Despite the equal shares, the parties have freedom to contract, and the court did not err in finding that they did so here.  There is competent evidence in the record to support the court's finding that they entered into a contract regarding the down payment.  Thus, the court did not err in finding that the parties agreed that Indorf would receive his down payment "first out" in the event of a sale or in crediting him for his contribution in the partition action.

[3]  There is some inconsistency in the court's findings.  The court stated the agreement "lacks sufficiently definite terms to be enforceable," which could mean the agreement fails in its entirety. *See Doe v. Lozano,* 2022 ME 33, ¶ 13, 276 A.3d 44.  However, the court also stated that some terms are clear and ultimately refused to enforce the agreement on the ground that it was unfair, rather than finding that no agreement was reached.

its entirety, and decided the partition action without regard to the October agreement. Ultimately, after accounting for Indorf's payment of the down payment and making the mortgage payments since May 2019, together with the increase in value because of the addition, the court found that Keep was entitled to be paid $143,084.98 in equity and ordered Indorf to refinance the property and buy Keep out in that amount or, if he was unable to refinance the property, to sell the property and divide the proceeds accordingly.

[¶14]  Keep then filed a motion on February 21, 2023, which, although styled as a motion to alter or amend the judgment, requested that the court consolidate, after the fact, the action for breach of contract with the partition action given our opinion in *Indorf v. Keep*, 2023 ME 11, 288 A.3d 1214.

[¶15]  On February 10, 2023, Indorf timely filed a notice of appeal from the amended partition judgment. We granted a stay of the appeal to permit trial court action on Keep's pending motion; the trial court denied Keep's motion in an order entered on March 28, 2023.[4]  On April 12, 2023, Keep filed a notice of appeal from the March 28 denial of her motion and a cross-appeal of the February 8, 2023, amended partition judgment. We lifted the stay in this appeal

---

[4]  The contract action is stayed in the District Court pending the outcome of this appeal.

8

on April 13, 2023.  On April 28, 2023, Indorf moved to dismiss Keep's cross-appeal as untimely.

## II.  DISCUSSION

### A.  Keep's Cross-appeal is untimely and will be dismissed.

[¶16]  Keep's cross-appeal was filed after her second post-judgment motion was denied, more than twenty-one days after the docketing of either the judgment or the order on her motion to alter or amend the judgment. Keep's cross-appeal is timely only if her second post-judgment motion extended the time limit for her to file an appeal.  *See* M.R. Civ. P. 59(e); M.R. App. P. 2B(c)(2).

[¶17]  Successive Rule 59(e) motions that result in judgments that are substantively altered may each extend the appeal period.  *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 18-19, 602 S.E.2d 772 (2004); *Wright v. Preferred Rsch., Inc.*, 891 F.2d 886, 889 (11th Cir. 1990).  Here, the judgment was substantively amended on February 8, 2023, following Indorf's motion to alter or amend the judgment.  Keep's February 21, 2013, filing was titled "Motion to Alter or Amend the Judgment," citing M.R. Civ. P. 59(e).  In fact, however, the motion sought to consolidate the partition and contract actions.  That is not a motion seeking to alter, amend, or reconsider the judgment. *See New Maine Nat. Bank v.*

*Nemon*, 588 A.2d 1191, 1193 (Me. 1991) (stating that a post-judgment motion is identified not by its caption but by its substance). Thus, Keep's motion did not extend the time for filing an appeal. *See* M.R. App. P. 2B(c)(2). As a result, Keep's cross-appeal is untimely. *See* M.R. App. P. 2C(a)(2), 2B(c)(2)(D); M.R. Civ. P. 59(e).

[¶18] Because Keep's cross-appeal is untimely, the court's finding that there were two agreements, the October 2019 agreement and the down payment agreement, is not challenged on appeal.[5] In deciding Indorf's appeal, our review is confined to whether the court erred or abused its discretion in setting aside the October 2019 settlement agreement.

**B.    Because the court found that the parties had a settlement agreement, the court erred in setting it aside on the basis that enforcing it would be unfair.**

[¶19] Indorf argues that the court abused its discretion by setting aside the October 2019 agreement and contends that, having found that the parties had entered into an agreement as set forth in the transcript, the court is required to enforce it.

[¶20] "Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact." *Muther v. Broad Cove*

---

[5] Even if we were to reach the issue Keep raises in her cross-appeal, the court's finding that there were two agreements was supported by the record evidence.

*Shore Ass'n*, 2009 ME 37, ¶ 6, 968 A.2d 539. When parties "report to the court that they have reached a settlement, read the terms of the agreement into the record with the assistance of counsel, and then express clear consent to those terms as recited, that settlement becomes an enforceable agreement and, upon acceptance by the court, is incorporated as a judgment of the court." *Id.* ¶ 7. "We review the trial court's findings of fact for clear error and affirm if there is competent evidence in the record to support the judgment." *State v. Price-Rite Fuel, Inc.*, 2011 ME 76, ¶ 18, 24 A.3d 81.

[¶21] "Whether the language of a contract is ambiguous is a question of law that we review *de novo*." *Spottiswoode v. Levine*, 1999 ME 79, ¶ 16, 730 A.2d 166 (quotation marks omitted). "A contract is ambiguous if it is reasonably susceptible to more than one interpretation." *Madore v. Kennebec Heights Country Club*, 2007 ME 92, ¶ 7, 926 A.2d 1180.

[¶22] "The interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983). "[W]hen the contract language is ambiguous and the ambiguity does not disappear when examined in the context of other provisions in the instrument, it is proper for

the factfinder to entertain extrinsic evidence casting light upon the intention of the parties with respect to the meaning of the unclear language." *T-M Oil Co., Inc. v. Pasquale*, 388 A.2d 82, 85 (Me. 1978) (citation omitted).

[¶23]  Here, the court found that there was a settlement agreement placed on the record in October 2019, and that finding is supported by the evidence.  The court also suggested that it was ambiguous.  However, the court did not resolve any ambiguity.  Rather, it "set[] aside the $377,000.00 property valuation because failing to do so would be unfair and inequitable given the length of the parties' contentious litigation, any Covid added court delays, and the unforeseeability of the home nearly doubling in value."  As authority to set aside the agreement, the court cited its general equity powers and its power as described in *Cloutier v. Cloutier*, 2003 ME 4, 814 A.2d 979.  In setting aside the agreement, the court erred.

[¶24]  In *Cloutier*, we stated,

> The question presented is whether, and under what circumstances, a judge may set aside a pretrial agreement between parties to a divorce and award an item of property in contravention of that agreement. Preliminarily, we note that the nature of the proceeding is important to the analysis. This is not a general civil matter where the parties are ordinarily free to enter into any agreement so long as it is not coerced. Rather, this is a family matter, where the court is called upon to exercise its authority in equity, and may be required to act as *parens patriae* if children are involved. . . . Thus a pretrial agreement between parties to a divorce

may be treated somewhat differently than a settlement in a civil suit.

2003 ME 4, ¶ 7, 814 A.2d 979. We specifically noted that the Cloutiers' mediated agreement to sell the marital home had not been placed on the record or approved by the court. *Id.* ¶ 8. We clearly limited the ability to set aside an otherwise enforceable agreement to the family matter context, and in particular when it would have a substantial detrimental effect on the children. *Id.* ¶¶ 11-13.

[¶25] In contrast, the matter before the court here was a civil partition claim, not a family matter. Keep and Indorf were not married; neither *Cloutier* nor general family law applied. In a general civil action, parties are free to enter into an agreement, and a court cannot simply disregard that agreement because it appears unfair in light of subsequent events.

[¶26] We conclude that although the parties entered into an enforceable agreement, the language of the settlement agreement was ambiguous, primarily because it is unclear whether the parties intended the May 2019 valuation to be conclusive in the trial of the partition action or for other purposes. The court should therefore apply contract law to give force to the

agreement's terms and it should consider extrinsic evidence to determine the meaning of the agreement rather than setting it aside.

[¶27]  We therefore remand for the court to determine the meaning of the agreement and how it affects the partition.[6]  After applying the agreement regarding the down payment and the agreement placed on the record in October 2019, the court should divide the remaining equity between the two parties to reflect their interests as joint tenants of the property.  *Bradford v. Dumond*, 675 A.2d 957, 961 (Me. 1996).  In light of the common questions of fact between the contract and partition actions, the court should consolidate the matters on remand.

The entry is:

> Judgment vacated.  Remanded to the trial court
> for proceedings consistent with this opinion.
> Keep's cross-appeal is dismissed as untimely.

Keith P. Richard, Esq. (orally), Archipelago, Portland, for appellant Christopher Indorf

Pamela Holmes, Esq. (orally), Holmes Legal Group, LLC, Wells, for appellee Heather Keep

Biddeford District Court docket number RE-2019-33
FOR CLERK REFERENCE ONLY

---

[6]  The court may reopen the record and take additional evidence if necessary.  *See In re Danielle S.*, 2004 ME 19, ¶ 2, 844 A.2d 1148 ("The trial court has discretion in determining whether a party may reopen its case after the close of evidence.").