MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 31
Docket:      Yor-24-377
Argued:      February 7, 2025
Decided:     March 27, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

MICHAELA (BELAIR) BOLAND

v.

NICHOLAS BELAIR

MEAD, J.

[¶1] Michaela Boland appeals from a final divorce judgment of the District Court (Biddeford, *D. Driscoll, J.*). She challenges an order of the court (*Tice, J.*) denying her motion to enforce a settlement agreement that she entered into with Nicholas Belair that was initially accepted by the court as fully resolving the economic issues in the parties' divorce case.[1] Michaela[2] contends that the court abused its discretion in setting aside the settlement agreement and proceeding with a contested trial upon finding that the agreement was

---

[1] The parties also resolved parental rights and responsibilities issues concerning their minor child. Neither party challenges those provisions of the divorce judgment, and they are not affected by today's opinion.

[2] For clarity, because the parties referred to themselves by their first names at trial, as did the court, and that practice continues in the briefs, we do so in this opinion.

2

based on a material mistake of fact and was therefore unenforceable. We agree,

vacate the order denying the motion to enforce, vacate the divorce judgment

entered by the court following the trial, and remand for incorporation of the

settlement agreement into a divorce judgment.[3]

## I.  BACKGROUND

[¶2]  In October 2019, Michaela filed a complaint for divorce.  In

September 2022, the court (*Tice, J.*) convened a hearing, noting, "We're on the

verge of a two-day trial.  Looks like some fairly complicated issues potentially."

The court invited the parties to meet "to see whether there's any possibility of

an agreement."

[¶3]  The parties succeeded in reaching an agreement.  In memorializing

its terms, the court swore in both parties, and each testified to what had been

agreed to.  Relevant here, Michaela's attorney recited:

> There[] will be a property transfer between Nicholas and Michaela
> of $50,000 a year for five years payable January 1st of each year.
> There will be a promissory note signed by Roland Belair [Nicholas's
> father] that will be interest free, but will contain a provision for
> interest for late payments.  Any payments that are missed, there
> will be an acceleration clause for the remaining payments, and
> there'll be a provision for attorney's fees if collection is necessary.

---

[3]  We therefore do not reach Michaela's second contention that the court erred at trial in
determining that Nicholas's interest in a real estate company was nonmarital property after rejecting
Michaela's expert's valuation of that interest.

Nicholas's attorney confirmed, "[T]hat's an accurate recitation," and Nicholas agreed that the settlement was "the most fair, equitable resolution [he] could come to based on all the facts present today."

[¶4]  The court then made findings, which included the following: "With regard to the property[,] . . . everyone did a good job here.  And with regard to the division of property and the marital property, . . . it is fair and equitable."  The court concluded: "[T]he divorce is granted. . . . It's fair and equitable. . . . [I]t is now on the record.  It is official."

[¶5]  Almost two months later, Michaela moved to enforce the settlement agreement, representing that after her attorney circulated a proposed stipulated divorce judgment based on the agreement, Roland Belair "reneged on his representation to the [c]ourt to secure the payment of $250,000."  The court held a hearing at which Roland, who had not appeared at the September 27, 2022, settlement agreement hearing, testified that he felt pressured and the next day changed his mind about funding the payments.  The parties agreed that the $250,000 payment was an essential element of the economic settlement.  Nicholas testified that he could not make the $50,000 annual payments without his father's assistance, but Michaela testified that she "absolutely" believed that he could make the payments.

4

[¶6]  In its resulting order, the court found that "absent the loan(s) from his father, [Nicholas] has no ability to pay on the agreed upon terms."  The court concluded that it had no jurisdiction over Roland Belair and that the settlement agreement was not enforceable against Nicholas Belair, notwithstanding that Nicholas had "clearly and unambiguously" entered into the "fair and equitable" agreement, because the agreement was based on a material mistake of fact and enforcing it "sets Nicholas up for immediate failure."  The court vacated its initial acceptance of the agreement and set the matter for trial.  Michaela appealed; we dismissed the appeal as interlocutory.  Subsequently, the trial court denied Michaela's motion to reconsider, in which she asserted that our decision in *Keep v. Indorf*, 2024 ME 14, 314 A.3d 141, controlled and required that the agreement be enforced.

[¶7]  The court (*D. Driscoll, J.*) held a bench trial on April 11-12, 2024.  In its judgment, the court found, inter alia, that Michaela had not met her burden to quantify an increase in the value of Nicholas's 33% interest in his father's business that she asserted had accrued during the marriage.  The court therefore determined that Nicholas's interest was nonmarital property.  *See* 19-A M.R.S. § 953 (2024).  Michaela timely appealed.  *See* 19-A M.R.S. § 104 (2024); M.R. App P. 2B(c)(1).

## II. DISCUSSION

[¶8]   Michaela contends that the court abused its discretion in setting aside the settlement agreement.  *See Keep*, 2024 ME 14, ¶¶ 18, 20, 314 A.3d 141 (stating that findings of fact are reviewed for clear error and the decision to set aside the settlement agreement is reviewed for an abuse of discretion).

[¶9]  In *Keep*, we said that

> [s]ettlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact.  When parties report to the court that they have reached a settlement, read the terms of the agreement into the record with the assistance of counsel, and then express clear consent to those terms as recited, that settlement becomes an enforceable agreement and, upon acceptance by the court, is incorporated as a judgment of the court.

*Id.* ¶ 20 (citation and quotation marks omitted).

[¶10]   On this record, all of the requirements for a binding settlement agreement were met.  The parties reported to the court that they had reached an agreement with the assistance of experienced counsel, read its terms into the record under oath, and told the court that the agreement was fair and equitable.  The court found that the agreement was indeed fair and equitable and pronounced it final: "[I]t is now on the record.  It is official."

[¶11]  We have said that "[a] family matter agreement does not become an order of the court until it is presented to and approved by the court." *Cloutier*

6

*v. Cloutier*, 2003 ME 4, ¶ 8, 814 A.2d 979.  Here that is precisely what happened, and so at the end of the settlement hearing the parties were left with an enforceable court order.  *Cf. id.* ¶ 10 ("When the court . . . concludes that there is a basis for setting aside an agreement *that has not been incorporated in a court order . . .* it may do so." (emphasis added)).

[¶12]  In general, "parties are free to enter into an agreement, and a court cannot simply disregard that agreement because it appears unfair in light of subsequent events."  *Keep*, 2024 ME 14, ¶ 25, 314 A.3d 141; *see Cloutier*, 2003 ME 4, ¶ 9, 814 A.2d 979 ("[I]n the normal course, the court should honor an agreement reached by the parties.").  Although a court's authority to set aside a settlement agreement is greater in a divorce case when the court exercises its *parens patriae* role and the agreement "would have a substantial detrimental effect on the child[]," *Keep*, 2024 ME 14, ¶ 24, 314 A.3d 141, here there are no issues in dispute concerning the parties' child.  Accordingly, as in *Keep*, it was error to set aside the parties' settlement agreement that became a judgment of the court after the court accepted the agreement and pronounced it "official." *See id.* ¶¶ 20, 23.

[¶13]  The court found that the agreement was "not enforceable" on the ground that it was based on a mistake of fact, namely that Roland Belair would

fund the $50,000 annual payments to Michaela that the agreement required. "It is well-settled that a contract is not legally binding if both parties have entered into it laboring under a good-faith mistake of fact." *Burggraff v. Baum*, 1998 ME 262, ¶ 7, 720 A.2d 1167. Here, however, no mistake of fact existed at the time the agreement was reached and became a judgment of the court. Roland had indeed agreed to fund the payments—there was no mistake about that. The fact that he later changed his mind does not alter the facts as they were known to the parties and the court at the time the agreement was reached and accepted.[4] As we said more than twenty-five years ago,

> A mutual mistake of fact to undermine the validity of a contract must exist at the time of entry of the contract. Events which occur subsequent to execution of a contract and are not contemplated by the parties at the time of execution of the contract[] are not a mutual mistake rendering a contract unenforceable. If mutual mistakes of fact which could void contracts were interpreted as any error in performance or change in expectations after entry of a contract, then all contracts could be undermined on [a] mutual mistake of fact theory.

*Nadeau v. Pitman*, 1999 ME 104, ¶ 16, 731 A.2d 863 (citations omitted).

---

[4] If post-agreement circumstances arise such that a party cannot comply with the agreement's provisions, that situation may be addressed in future proceedings. *See, e.g.*, M.R. Civ. P. 60(b); *Silverwolf v. Colton*, 2020 ME 94, ¶ 8, 237 A.3d 162. The possibility that a party may not be able to comply with an agreement after it is finalized—which always exists—does not affect the validity of the agreement. *See Nadeau v. Pitman*, 1999 ME 104, ¶ 16, 731 A.2d 863.

8

[¶14]   We hold that the parties' settlement agreement, which was "incorporated as a judgment of the court," *Keep*, 2024 ME 14, ¶ 20, 314 A.3d 141 (quotation marks omitted), must be enforced.  We therefore vacate the divorce judgment entered after trial and remand for entry of a divorce judgment incorporating the settlement agreement.

The entry is:

> The order of the court denying Michaela Boland's motion to enforce the parties' settlement agreement is vacated.  The divorce judgment is vacated, and the matter remanded for further proceedings consistent with this opinion.

---

Gene R. Libby, Esq., and Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Michaela (Belair) Boland

Kenneth P. Altshuler, Esq. (orally), Childs Rundlett & Altshuler, Portland, for appellee Nicholas Belair

Biddeford District Court docket number FM-2019-381
FOR CLERK REFERENCE ONLY